Good morning, may it please the court. Honored judges, my name is Charles Carlson. I'm from Tampa, Florida. With me at council table is my partner, Leslie J. Barnett, and I have the pleasure of representing CRI-Leslie, LLC, who is the taxpayer petitioner appellant in this case. The issue in this case involves a question of first impression, statutory interpretation, of whether Section 1234A of the Internal Revenue Code applies to contracts respecting property involving trade or business 1231 property. In this case, 1234A was designed to remove the sale or exchange impediment to the realization of capital gains. 1234A was enacted with a specific legislative intent. Before we start talking about what it was designed to do or intended to do, let's talk about what it did. And 1234 trades on 1221, and so let's talk about 1221. Yes, sir, your honor. 1221 certainly defines the term capital asset. And CRI-Leslie concedes that the general rule is if another section of the applicable statute defines a term, that's the term that controls. However, in this case, we've got express legislative intent expressed in the statute. Okay, so expressed where in the statute. That's what I want to talk about. It's expressed in the legislative intent that it's the intent of Congress. I guess I want to talk about the language. Let's start with language. I understand that you have an argument about legislative history, which I find not insubstantial. But I'd like to talk about the text of the statute first. Okay. Well, the text of the statute does use the term capital asset. Capital asset is defined in 1221. Right. And it's defined to exclude property used in a trade or business. And so the bottom line is if we were to apply the definition Congress chose to employ in 1221, you can't win.  You have to say that we should be using a dictionary definition rather than a statutory definition or an ordinary understanding of a term that might otherwise differ from the meaning that Congress chose to impose in a definitional sense. Right. That is correct, Your Honor. Let me ask you the question. The Supreme Court of the United States has said, and we've certainly repeated it many, many times, that a statutory definition employed by a legislative body, no less the Congress, takes and necessarily must take precedence over a dictionary definition where the dictionary definition is different from the statutory definition. Is that not clearly the binding law? That is the general rule, Your Honor. But I'm not aware of any authorities that present a situation such as this where you have such a clear statement in the legislative intent that a different meaning needs to be ascribed to the term capital asset. We have a provision in the legislative intent in the House bill, the Senate bill, and the Joint Committee bill. But isn't it just possible that Congress just stubbed its toe somewhere between formulating its intent and putting pen to paper? And if that's true, aren't we obliged to pay homage to the pen to paper? By applying the 1221 definition to capital asset, not only do you run directly afoul of this very clear language in the committee reports that very clearly says that this statute, the amendment is going to affect contracts respecting 1231 property. It's very specific about that. And the facts in the cases that are cited in that portion of the legislative history are indistinguishable as a practical matter from the facts in this case. What if we say, what if we were to say to you, granted, granted, granted, but see the text of the statute? That's the difficulty for me. Well, the only way that you can give effect not only to this express language that we've been talking about, but also to some other overriding context with respect to the statute. Property used in a trade or business is given preferential treatment under the Internal Revenue Code. 1231 gives preferential treatment to property used in a trade or business. The tax court's interpretation of this statute turns that whole notion on its head. So your point from sort of from context or from common sense is that it's not your client's fault that this deal fell through, and if the deal had gone through, they would have gotten capital gains treatment, and so why not here? That's the anomaly and the disconnect about the tax court's ruling here. It's clear that the 1234A, that the overriding core objective is to treat economically equivalent transactions in an equivalent way from a tax perspective. Yet the tax court doesn't do it here. They interpret 1234A. They prejudice what is a type of taxpayer who is normally given preferential treatment under the code, and they don't give effect to this express language in the legislative history that says this needs to apply to 1231 property. So yes, admittedly, the general rule is that the 1221 definition would apply, but when you look at all those other factors, the larger context of the statute, and the particular language in the legislative history that says this applies to 1231, the only way that you can reconcile that clear statement of intent with this result is to apply the broader definition. Do you have cases, to Judge Marcus's question, do you have cases, and you may, in which we have notwithstanding a statutory definition said, nah, we're going to look beyond it and look to dictionaries or whatever? I have not found a case. The cases are, as Judge Marcus noted, there are many cases out there that indicate. The problem is there are not only many cases out there. The law has been pronounced more than once by the Supreme Court on that very point, that if you've got a statutory definition, you're obliged to use that statutory definition instead of a dictionary or ordinary definition that you might commonly put to it unless it yields a result that is so absurd. But I don't see you arguing that the result reached here is absurd, that no rational Congress could have done what it did here and made the definition in 1221 applicable. Or is it your view that the result would be an absurd one for Congress to apply 1221 in this context? I don't know that we necessarily have to meet the absurdity test. I think the test is. So what do you think you have to show in order to get around the unambiguous definition that Congress put in 1221? Well, I think there's a couple of things in the context of 1234A that also lend credence to our argument that the 1221 definition is not applicable here. Now, remember, we're dealing with the Internal Revenue Code, which is a different sort of animal. Within Subpart A, Subtitle A, which the 1221 definition is contained, there are several other statutes that we've cited in our briefs that when they make reference to capital asset, they specifically say, as used, as defined in 1221. So in our statute, 1234A, we don't have that language. Additionally, within 1234A, we have citations to two other defined terms that are defined in the Internal Revenue Code, and both of those defined terms make specific reference, as used in such and such statute, as used in such and such statute. But when Congress uses the term capital asset, there is no as defined in 1221A, and that lack of that clarity is conspicuous. I think that to answer your question about the using the cases that say that you are to use the statutory definition, there are also cases that say that the primary charge of the court is to ascertain what the intent of the statute is. Principally from the text of the statute, correct? You look to the text of the statute, but there is nothing, the cases that have been cited in the briefs are clear, that if you have a clear expression of intent from Congress, that that's your mission is to apply that in interpreting the statute. And there's no way to apply the clear intent that this statute applied to 1231 property by using the 1221 definition of capital asset. You just can't get there. This just, to me, struck me in reading the briefs like a fairly classic example of sort of fairly clear text versus, I'll grant you sort of fairly clear evidence of intent. On the other hand, the difficulty I think for you is that for an entire generation of Supreme Court and Eleventh Circuit precedent, we have now said when you have that sort of clash, you have to do justice by the text. I've not seen the cases that have the clash quite like we have in this case, Judge Newsom. Certainly the cases are there that the presumption is that you use the statutory definition. Definitely those cases are there. But the cases where you have this type of strength of legislative history are very few and far between. And when you do have this clear expression, particularly against the backdrop of the larger context of the statute, where you're actually disfavoring 1231 property in this context, it makes absolutely no sense. And so the only way to reconcile all of that is to apply an ordinary meaning to the term capital asset. The difficulty, of course, I'm sure you've thought through all of this. The difficulty is that the only thing that was voted on, passed, presented to the president and became law was the text that you, I think, in effect, have conceded to Judge Marcus to feed your argument. So I don't know how anything else could be the law that controls the case. I mean, the legislative history wasn't voted on. The legislative history wasn't presented to the president. The legislative history never became the law, right? And why is the term capital asset, which has a widely understood common meaning in the context of tax law, different from 1221? There are dual meanings to the term capital asset. Are you suggesting there was no rational basis for them to have used a different definition here? Are you suggesting Congress could – we couldn't come up with any rational basis to explain why Congress did what it did in the definition? In this particular statute, what I'm saying is there's no way to get to what's expressed in the legislative history by applying the 1221 definition of the term. You have reserved five minutes for your rebuttal, and we'll give you the full period. Thank you very much. Thank you, Your Honor. Good morning. Good morning. May it please the Court. Deborah Snyder for the Commissioner of Internal Revenue. The tax court's decision is correct in this case because, as the Court has observed, it gives effect to the plain meaning of the statute. Section 1234A applies with respect to property that is or on acquisition would be a capital asset. The statute, it treats the cancellation of a right as a sale, but it doesn't change the character of the underlying property. If the underlying property is not a capital asset, then 1234A does not apply. And the parties, of course, stipulated here that the underlying property was not a capital asset. I would respectfully disagree that there are dual meanings of the term capital asset. Capital asset is defined for purposes of Subtitle A in Section 1221 of the Code, which explicitly excludes trade or business property, and that's the same property that's covered by Section 1231, so they're mutually exclusive. There's no authority for using an arguable plain meaning definition of the term capital asset when it's defined for purposes of the Code. Let me ask you this. Your opponent, I think to his great credit, concedes, in effect, that he loses under the plain language. Do you concede that the legislative history seems to head in the other direction? Definitely not. Okay. I think to say that the legislative history is clear that it intends to include 1231 property in 1234A is a vast overstatement. I don't think the legislative history mentions Section 1231. And to the contrary, the legislative history does mention in a footnote the definition of capital asset excludes trade or business property, and it also says that 1234A does not change the character of the underlying property. You know, I think the legislative intent is a little bit muddled, but it nowhere says that it intends to extend 1234A to 1231 property. And, in fact, the requirement that the underlying property be a capital asset was in Section 1234A since the time it was enacted in 1981. I think what C.R.I. Leslie's position is is that somehow that changed in 1997 because there are some ambiguous stuff in the committee reports in a footnote. But the problem is if Congress had intended to change the capital asset requirement in 1997, it would have changed the text of the statute. And there are certainly other examples in the code and the tax court discussed them where if Congress wanted a result similar to what they're advocating, it would have used different language. Or even simpler, it could have said 1234A applies with respect to capital assets and with respect to Section 1231 property, but it didn't say that. And I think it strains credulity to argue that if Congress had intended to change how 1234A applied, instead of changing the language, it would have kept the capital asset requirement in the statute, but said, well, maybe somebody can extrapolate from cases cited as see also in a footnote. I mean, that just Congress doesn't legislate that way, and it just doesn't make sense. And I think also there's some confusion about Section 1231. Section 1231 is a very taxpayer favorable provision. It essentially gives taxpayers the best of both worlds. Without Section 1231, a sale of trade or business property would result in ordinary income. But what Section 1231 does is it says, you know, we'll give you the best of both worlds. If your net on the aggregate 1231 gains, if your net is a gain for 1231 property, you get capital gain treatment. But if your net is a loss, you get ordinary loss. So it is a very taxpayer favorable provision, but it does not come along with 1234A treatment. There's a difference between the character of the gain, which is what 1231 speaks to, and the character of the underlying property. Section 1231 doesn't change the character of the underlying property to a capital asset, and that's why Section 1234A does not apply. But you hear right, I mean, you hear what they're saying. They're saying, so 1231 is a very taxpayer favorable statute, gives you the benefit of capital gains, ordinary losses. It's not our fault that this deal cratered. I mean, if the deal had gone through, we would have gotten 1231 treatment. So sort of why are we being penalized? Well, they're not being penalized because when you think about it, they get to keep both the forfeited deposit and the property. There's nothing that would stop them from selling the property in the future and getting capital gain treatment. So I don't think it's inequitable at all. And in any event, as the court knows, in order to avoid applying the plain language of the statute, it would have to produce a result that would be considered legally absurd. And as the court explained in the Packard case involving a tax credit, to have a statute be absurd, it would have to basically shock the moral or common sense. And there's absolutely nothing that tends in that direction in this case. In fact, the CRI Leslie's argument would actually result in an inconsistency as well, because Section 1231, when it applies, if you have net gain, it's usually capital, but if you have net loss, it's ordinary. And so in effect, if Section 1234A treated trader business gains and losses as all capital, then that would be an inconsistent treatment on the loss side because the losses would no longer be ordinary. They'd be converted to capital. So that wouldn't make sense either. Does the court have further questions about the capital gain matter? We have no further questions. Okay. I do also know that the taxpayer has a secondary argument about abusive discretion on a motion to strike. If the court has no questions about that, we can rest on our brief. We have no further questions. Thank you. Thank you very much.  Thank you, Your Honor. I think it's important to point out that the tax court also recognized the intellectual inconsistency in its ruling. It said that in its order. Had the property closed, that very same deposit money would have been applied to the purchase price and it would have been taxed at capital gains. On the flip side, because the property didn't close, the very same dollars that were in that deposit received by the taxpayer are taxed as ordinary income. The tax court recognized that inconsistency. Now, what about your opponent's response to my question that, in this case, it's not so unfair. You keep the money. You keep the property. It's inconsistent, though. It's an inconsistent tax treatment, which runs completely afoul of the overriding core purpose of 1234A, which is to treat economically equivalent transactions in the same way from a tax perspective. And that's the overriding problem. And then we have the very specific problem where the legislative history, again, says, and the tax court never responded to the language in the House and the Senate bill in the joint committee report. I mean, that language says an example of the type of property interest that's going to be affected by this act is the tax treatment of amounts received to release a lessee from a requirement that the premises be restored on a termination of lease. That's 1231 property. That's cancellation of a contract respecting 1231 property, factually indistinguishable from our fact pattern. And so the tax court didn't address it at all. What the tax court said, I was unable to find anything in the legislative history, so a complete end run around it. The IRS avoids it as well. The IRS tries to minimize it. Oh, it's just you're extrapolating a footnote. Well, not really. I mean, the footnote amplifies it because it cites two cases which are also factually indistinguishable from us. But it's right there in the text in the section of the legislative history that says explanation of the act. So neither my worthy opponent nor the tax court have confronted this head on, and it squarely says that in there. So in the absence of any cases, I'm not aware of any cases that present this precise situation, a situation where following the legislative history would be consistent with the overall scheme, including treating 1231 property in a preferential way, would be consistent with express language in the legislative history, and where the term that you're talking about that has a statutory definition in the same context of the tax code also has an ordinary meaning, which is used, in fact, used in case law that is interpreting other sections of Subtitle A. For example, we cited a case in our brief, an 11th Circuit case that's interpreting Section 263. They use the plain meaning of the term capital asset. They don't use 1221. Under the always, always, always, it must be 1221, that wouldn't work. The court would have to use the 1221 definition. So to completely, you know, pretend as if there's not this other meaning of capital asset in this context is not accurate. It's there, and when you read the legislative history, it's clear that Congress was aware it was there. Thank you, counsel. Thank you. Thank you both. We will take a short recess, and when we come back, we will proceed to the Code Revision Commission versus the Public Resources Organization, Inc. Thank you, folks.